Mr. Hillis. May it please the court, counsel. My name is Daniel Hillis. I'm with the Federal Public Defender's Office. I represent Mr. Phillips on this appeal. He raises a single issue, and it concerns Ferretta. Of course, the defendant has a Sixth Amendment right to counsel, unless the defendant validly waives that. And we make that determination based on the record that is before the district court. So I'd like to begin by saying where the government refers to the record as a whole and then refers to the defendant as a whole. When he refers to a transcript from 2017, that's not part of the record as a whole. The record as a whole is this court. We can look to what the district court's determinations are and the facts that were before it, but it didn't consider that transcript, and it's incorrect to ask this court to consider it now or to say take judicial notice of that. It just doesn't square with anything that we've seen heretofore in any Ferretta Colloquy case. There's the United States v. Curt Johnson, which I know Judge Scudder is likely familiar with. He was on that panel. The court there did not resort to looking to the Ferretta Colloquy from years earlier in Mr. Johnson's case to determine if he made a knowing and voluntary decision in the later federal prosecution. So I just don't think there's support for the government's far-reaching effort to start looping in facts that preceded the instant inquiry as occurred here in this case, and the record as a whole needs to be understood as the record in the particular case that was before the district court when it made its determinations. With that as a sort of parameter that I hope is followed and is correct, I would say that there are many misses here that were unforced errors. Time and time again, we are seeing district courts that are sort of doing this on the fly, and it creates problems. We have bench books. District courts don't seem to resort to them as they should. Perhaps it was the case in Underwood, a case the government cites. Perhaps, again, it was the case in the United States v. Johnson. But this case likely would have far fewer problems for the government and for this court to consider were the district court simply to use the normal resource here, which is the bench book that's typically at the judge's elbow in the district court. So the problems that we have as a result of not relying on the bench book, which is a pretty nice resource for judges to use, tried and true, but we have all sorts of problems that were things that the district court should have and didn't consider. Didn't ask my client's age. Didn't tell him all of the penalties. Certainly asked the government to inform him of the penalties the government mentioned about the length of incarceration. But there are multiple components in the penalties that a person faces upon conviction. Restitution, supervised release, fine. Those things weren't told to my client before he made this decision. Of course, restitution was ultimately imposed, as was $10,000 in restitution, as was a period of supervised release. These are things that the district court should have covered and didn't. Didn't ask him if he knew his defenses. And I don't think that I am on exactly firm ground in the Seventh Circuit to say that that's a consideration. But Van Molte, the concurrent, said that it's something that should have been considered. The position was recently rejected in Underwood. But the Tenth Circuit and Hansen, I think that we're going to have a circuit split if this continues, that it's a very easy thing to say, are you aware that you may have defenses? You don't have to go into great detail, but that's an easy thing to cover and should be included in the bench book, should be considered as a thorough part of the inquiry. But that wasn't done here either. And Hansen suggests, says that it should be. That's the Tenth Circuit case. The judge said this is a terrible decision to proceed pro se. We agree with that fully. But nevertheless, there was little done other than the cursory remark to tell my client why it was. So we have Bellinger in cases that say cursory statements aren't enough. It doesn't take too much to explain to somebody about the resources of the government, the fact that the government's lawyers are trained, highly skilled, have attended law school. Those things could have easily been covered and they weren't. Mr. Hillis, can I offer a reaction? You can tell me I've read it wrong. Judge Johnston has a fair bit of experience with your client, including, you don't even have to go back to 17, including in this particular case. There was a point in time where he said he wanted to waive counsel. They did it phoretically, he did it, he waived. He then gets counsel for a portion of time. And then as I read this, he seemed to want to go pro se again because he thought that that would lead to the proceedings speeding up and him getting some kind of faster trial that way. And it was against that backdrop that the district court said, oh, we're going to do this again? And I think it's fair for you to say it may not comply exactly with the bench book. But can't the district judge consider that limited portion of history in the same case? It can consider it, but that's just one factor among many, Judge, and I don't see that as remediating all the other problems that occurred in this case. Furthermore, that strikes me as considering what the defendant's strategic. When you combine the two, it's more fulsome. It doesn't go all the way to what you're talking about, but it's more fulsome. Sure, so it is additional color, but it would be something now I think you're having to sort of read between the lines about the district court must have known. Purpose of threat is put it on the record and say explicitly what it is you know how and what your conclusions are. So I think that you are intuitively correct that the district court does know things and they're going to shape the district. It was almost as if the district court said, you know, we're going to do this again. I mean, come on. What are you doing? You want to go? You just told me in no uncertain terms you want counsel. Now you want to go pro se again? Why are we doing this again? That was the flavor of it as I read it. Judge, that would worry me that if we're going to say that a judge with experience with the person says we're going to do this again can reach back and go to the 2017 transfer. The judge went through a phoretic colloquy, which is not as fulsome as the one you wanted. That's what we need, though, is that every determination on phoretic for a valid waiver of your Sixth Amendment right needs to be done then and there and done correctly. I got one. I just have one tangent question. Anybody ever questioned the defendant's competency? I mean that seriously. Sure, I think that's fair game. No, not that I see. All right. I was looking for it because this kind of erratic behavior. By my client to perhaps put it charitably to put it charitably. Yes. And so we don't need to put on blinders as district court judges when we see things that are occurring that don't seem right. We could make those sort of inquiries. And there are lots of problems here. And I'll just run down the list of the rest of them. But where I mentioned the government's attorneys are well educated. My client wasn't my client. I'm not even certain the district court knew what his educational level was. He certainly didn't ask. He ultimately attended a community college, but that doesn't even require a GED. The particular place that he went to and the adequate consideration of my client's background and experience, that never occurred either. And so far as another thing you alluded to, Judge Scudder, about the need for speed to get on with this and go forward. I don't know what benefit that would serve my client. It speaks to a misperceived strategic impulse on his part, which suggests to me there was not a valid strategic consideration that motivated his decision. That's kind of what's animating my second. This is a bank robbery, for goodness sakes. It's caught on tape, identified. I mean, I don't know what you're rushing to a trial for. Some people may not want to go to trial at all in a case like this, Judge. But nevertheless, the inquiry was inadequate for my client perhaps to have counsel to have him make a sound decision. So these are the things that we have trouble with, and we would ask this court to not accept the government's position that all was well. Thank you, Mr. Hillis. Mr. Shin. Good morning. May it please the court. Min Jae Shin for the United States. The district court did not earn finding that the defendant made a valid waiver of his right to counsel. The standard that governs this inquiry is a flexible four-factor test that looks at all times to the record as a whole, not just the transcript. It is not a talismanic procedure. The ultimate question at the center of this inquiry is not what was said or not said to the defendant, but whether the defendant in fact made an informed waiver. When considering each of the four factors here, each of these factors weigh in favor of a valid waiver. I would actually like to take these factors out of order because I would like to highlight factors two and three. Factor two is other evidence in the record that the defendants understood the dangers of self-representation. And I would like to point to the defendant's own statements that he made in his written motion that triggered the colloquy in the first place. He wrote and signed this motion at a time when he was still represented, and in that motion he represented that, quote, I am fully aware of the advantages and disadvantages of proceeding pro se. I have not been forced to proceed pro se, and it is my decision and will to represent myself. My attorney and I have agreed that it would benefit me more, and I will have more productive court dates if I proceed pro se. I think this statement in particular is important because the defendant is representing that he has actually consulted with his lawyer about this decision. There's also stating a strategic reason why he wants to represent himself to have more productive court dates. He also notes that he has many years and experience. Because more productive court dates means speed this up? It's hard to know what he means exactly, but it seems that in his mind that he felt that representing himself would be to his benefit. I would also note that in the actual colloquy at issue, after the court found that he made a waiver, he noted that he announced his intention to file pretrial motions, and he actually represented that he had already tendered a draft of those pretrial motions to his lawyer at the time, which indicates that he had an idea and a plan for proceeding pro se. I just want to highlight that this written motion, we see evidence that even before the colloquy comes into play, the defendant put thought, time, and deliberation to compose in his own words why he wanted to proceed pro se. I'd also like to highlight the defendant's background and experience. Here the evidence is very strong that the defendant clearly appreciated the risks of representing himself in a bank robbery case in federal court. He had prior experience with the criminal justice system, including as a defendant in a prior federal bank robbery. This is something that you can gather from the transcript at issue without having to look at the 2017 transcript. He went pro se for a time in a prior bank robbery case, even filing a motion to dismiss. He pled guilty at a later stage when he was represented. This is significant because it shows that a defendant, by entering a guilty plea, certainly weighed the risks of proceeding to trial for defending a bank robbery charge in federal court. Here the defendant clearly understood the stakes and the penalties of a bank robbery in federal court. As a result of his guilty plea, he was convicted to four years of imprisonment, four years of supervised release. And I would actually note that as the defendant was participating in the colloquy at issue, he was still serving the terms of the supervised release, and there was a pending replication proceeding. So it is clear that he understood the stakes. He was also imposed a $36,000 restitution. He also understood that there were financial obligations that could be imposed. Lastly, I would just circle back to the first factor, whether there was a formal hearing and the extent of that hearing. Here there's no contest that there was a formal hearing. The only thing that's being challenged is the extent of that hearing. But the question here is whether the colloquy was sufficient enough such that this factor weighs in favor of the valid waiver. Here I would note that in the colloquy itself, there was discussion of education, the maximum terms of imprisonment, a defendant's prior experience with the criminal justice system, including the fact that the defendant represented himself as a pro se litigant during that time. It's several stern warnings concluding with the judge's consideration that the defendant was making a terrible mistake, and I would just conclude by highlighting that the law is clear that even where there is a deficient colloquy or the failure to conduct the formal colloquy at all, if there's other record in the evidence that supports a valid waiver, then the deficient colloquy is not dispositive. I ask this court to affirm the district court's finding of a valid waiver of the right to counsel. Thank you. Thank you. Anything further, Mr. Hillis? Thank you very much. The case is taken under advisement.